UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GWENDOLYN DONALD,

    Plaintiff,

v.
            Case Number 09-12252-BC
            Honorable Thomas L. Ludington

SYBRA INCORPORATED, d/b/a ARBY'S,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO STRIKE AS MOOT

  Plaintiff Gwendolyn Donald contends in her June 11, 2009 complaint that her former employer, Defendant Sybra Incorporated,[1] ended her employment because of a serious medical condition that required ongoing care in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2617, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12300, and the Michigan Persons with Disabilities Civil Rights Act ("MPDCRA"), Mich. Comp. Laws §§ 37.1101–.1607.  On May 28, 2010, Defendant filed a motion for summary judgment admitting that Plaintiff worked at two of its "Arby's" restaurants in Saginaw, Michigan until her employment was terminated in February 2008.  Defendant contends, however, that Plaintiff's employment was ended because she was suspected of stealing from the company and its customers and that there is no causal connection between her medical issues or her time away from work on FMLA leave and the decision to end her employment.

  For the reasons stated below, Defendant's motion for summary judgment will be granted. Defendant's motion to strike Plaintiff's expert witness will be denied as moot.  The parties papers

---

[1] The correct name of her employer is Sybra, LLC.

[Dkt. # 12, 18, 21] provide the necessary information to decide the motion for summary judgment. Accordingly, the hearing scheduled for August 3, 2010 was canceled. *See* E.D. Mich. L.R. 7.1(f).

**I**

Plaintiff was hired by Defendant on December 13, 2005 as an assistant manager at Defendant's Holland Avenue restaurant in Saginaw. Plaintiff had substantial experience in the fast food industry, including several years working as a general manager at a McDonald's restaurant in Detroit. Plaintiff suffered a series of medical problems shortly after she began working for Defendant. Although the exact dates are not part of the record, she missed one week of work in 2006 for gallbladder surgery. She was also out of work on approved FMLA leave from July 12, 2007 to September 14, 2007 to receive treatment for ovarian cysts and renal stones. *See* Short Term Disability Application; [Dkt. # 18-6–7].

Plaintiff returned to her position as an assistant manager following both leaves, but following the second leave she was transferred to a different store on State Street in Saginaw. The leadership structure at the State Street restaurant included Kyle Plum, the store manager, Margo Barocko, the district partner and Plum's supervisor, and Eric Ballance, a senior director of operations and Barocko's supervisor. Ballance visited the State Street restaurant only a few times per year, but Barocko was there as often as twice per week. Ballance, Barocko, and Plum apparently were aware of Plaintiff's medical problems and understood that she experienced frequent and severe pain. Sometime shortly after she returned to work on September 14, 2007, Barocko allegedly suggested that Plaintiff "should be disabled" because of her medical problems. Pl. Dep. 51. Barocko denies making the statement.

On February 14, 2008 Plaintiff worked the restaurant's drive-through window, and her cash

register was $4 over at the end or her shift. Upon learning of the overage from Karen Bernard,[2] Plum grew concerned and contacted Barocko, who contacted Ballance, to discuss the overage. Plumb was concerned about the overage because such discrepancies often result from employee theft. The three supervisors agreed that Plum would listen with a headset to customer orders during Plaintiff's next shift and compare the customers' requests to the electronic receipts recorded by the cash register. On February 22, 2008, Plum executed the plan and noticed several discrepancies. During one series of four transactions, Plaintiff applied discounts at the pickup window on three of the transactions that she did not include in the order total announced to the customer over the intercom system. Although Plum could not be sure because he did not know if the customers were producing coupons at the last minute when picking up their orders, he suspected Plaintiff was charging the customers the full amount then ringing a discount into the register and pocketing the difference. Plum again consulted with Ballance and Barocko, and Ballance made the determination to terminate Plaintiff's employment for possible theft. It is not clear from the record which day the determination was made.

Plaintiff typically worked five-day weeks with two regularly scheduled days off each week. Plaintiff's regularly scheduled days off were February 25 and 26. She used those days to receive treatment for ongoing problems with renal stones, intending to return to work on February 27. The treatment was unsuccessful and Plaintiff was in extreme pain on February 26. She called Plum on that date and informed him she would not be able to return to work until February 29 because of the pain associated with her medical condition. She did not provide formal notice or make a request for FMLA leave. When Plaintiff returned to work on February 29, Plum confronted her about the

---

[2] Bernard, like Plaintiff, was eventually terminated for alleged theft.

alleged thefts and asked her to sign a written form acknowledging the theft. Plaintiff refused, and her employment was terminated. Following the termination, Plaintiff received unemployment compensation without objection from Defendant.

## II

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate

specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252.

### III

Although Plaintiff's complaint lists only two counts, viewed in the light most favorable to her, the complaint includes four distinct claims: (1) interference under the FMLA, 29 U.S.C. § 2615(a)(1); (2) retaliation under the FMLA, 29 U.S.C. § 2615(a)(2); (3) discrimination under the ADA, 42 U.S.C. § 12112(a); and (4) discrimination under the MPDCRA, Mich. Comp. Laws § 37.1202(1)(b). Defendant raises several defenses in its motion, contending that Plaintiff did not provide proper notice of her intention to take FMLA leave on February 27 and 28; that Plaintiff cannot show the decision to end her employment was based on her FMLA leave the previous summer; that Plaintiff does not have a "disability" within the meaning of the ADA or the MPDCRA; that Plaintiff cannot show her employment was terminated because of the alleged disability; and that Plaintiff cannot demonstrate the articulated reason for the decision, theft, is a pretext for unlawful discrimination.

### A

The FMLA prohibits covered employers from interfering with an employee's right to FMLA leave or retaliating against an employee for exercising her right to FMLA leave. 29 U.S.C. § 2615(a)(1)–(2). The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting framework is employed to evaluate FMLA claims at the summary judgment phase. *See Edgar v. Jac Prod. Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). Initially, Plaintiff has the burden of demonstrating a prima facie case of interference or retaliation. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993). The burden then

shifts to the Defendant, who must present a legitimate, nondiscriminatory reason for the decision to rebut Plaintiff's prima facie case. *Id.* Finally, the burden shifts back to the Plaintiff, who must establish that the Defendant's stated reason for the decision is a pretext for unlawful discrimination. *Id.*; *see also Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). "Although the burdens of production shift, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Macy v. Hopkins County Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

> To demonstrate a prima facie case of FMLA retaliation, Plaintiff must show that
>
> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn. Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban*, 345 F.3d at 404)). To demonstrate a prima facie case of FMLA interference, Plaintiff must show that

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Id.* (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

Plaintiff concedes that there is no causal connection between Plaintiff's authorized FMLA leave in July through September 2007 and the decision to end her employment the following February. Rather, Plaintiff contends that her illness-related absence on February 27 and 28, 2008 either motivated the decision to end her employment or that the decision to end her employment on February 29, 2009 constituted unlawful interference with her right to return to work following

medical leave. There are substantial questions concerning whether Plaintiff properly informed Defendant of her intention to take FMLA leave on February 27 and 28, whether Plaintiff was engaged in protected activity on those dates, whether Defendant ever "interfered" with Plaintiff's exercise of FMLA rights, and whether there is any causal connection between Plaintiff's absence from work for medical reasons and the decision to end her employment. However, it is unnecessary to discuss those issues because it is clear from the record that Defendant had a legitimate, nondiscriminatory reason to end Plaintiff's employment and Plaintiff has not demonstrated that reason was a pretext for unlawful discrimination.

Plaintiff's direct supervisor, Plum, as well as two higher-level managers, Barocko and Ballance, concluded that the most likely explanation for the February 14, 2008 overage and the February 22, 2010 discrepancies between customer orders and the electronic receipts was that Plaintiff was stealing from the company and its customers. *See* Plum Dep. at 49; Barocko Dep. at 23–26, 52; Ballance Dep at 46–52. Accordingly, they concluded it was appropriate to end her employment. Plaintiff can rebut Defendant's explanation by demonstrating that (1) the proffered reason had no basis in fact; (2) the proffered reason was not the actual motivation for the decision; or (3) the proffered reason was insufficient to motivate termination of employment. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (FMLA pretext). "[A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination." *Chen*, 580 F.3d at 400 n.4 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Plaintiff asserts Defendant's stated reason is pretextual because:

1) Plaintiff had a longstanding history in the industry and was viewed as a very good and honest employee; 2) No one from the Defendant ever confronted the Plaintiff prior to the date of termination when she came back to work after [receiving treatment for] her kidney stones; 3) Being $4.00 over in one's till is not evidence of

  theft[;] 4) That there were perfectly good explanations for there being a discrepancy between an initial order and the rung up order[,] such as later produced coupons or loyalty cards that allowed certain discounts; 5) That the Defendant failed to follow its own disciplinary progression; 6) That the Defendant did not call the police[;] 7) That the Defendant never disputed the Plaintiff's [u]nemployment benefits; 8) Margo Barocko's intentional false testimony regarding her advice to Plaintiff to go out on [d]isability . . . [;] 9) [Barocko]'s clear misstatements that she knew nothing of the Plaintiff's condition prior to the termination where Eric Balance [sic] testified that he had many discussions with [Barocko] regarding the medical procedures that the Plaintiff was going to have[;] 10) That Kyle Plum's denials of knowing that anything was wrong with the Plaintiff when he later admitted that he was aware that she was taking numerous pain killers including Vicodin [;] 11) Also the acknowledgement [sic] by the Plaintiff as well as independently corroborated by Esther Benson that Plum knew that the Plaintiff was having trouble with her back and therefore had himself and others lift heavy items from the freezer for the Plaintiff[;] and 13) [sic] The gist of Defendant's contention that the Plaintiff was stealing was based on the representation of a Karen Bernard, a woman who was fired for theft, and a woman who Margo Barocko characterized as a troubled employee who was not reliable.

Pl.'s Resp. at 22–23; [Dkt. # 12].

  Contrary to Plaintiff's contention, "[b]eing $4.00 over in one's till" can be some evidence of far greater theft, and was inconclusively corroborated by Plum's investigation of customer orders on February 22, 2008. Similarly, while Plaintiff did not receive the verbal or written warnings described in the company's progressive discipline policy, the company handbook makes clear that theft is grounds for immediate termination. *See* Team Member Handbook 30; [Dkt. # 18-11]. More importantly, none of Plaintiff's other explanations demonstrate that Defendant's stated reason for the decision to end her employment, her apparent embezzlement, was pretextual. Plaintiff's long and successful history in the industry does not nullify the evidence of Plaintiff's possible theft, nor does the fact that the alleged theft was not discovered until she had worked for Defendant for three years. A demonstrable risk of theft, whether involving a respected employee or not, is a legitimate reason for an employer to end that person's employment.

  Plaintiff's explanation for the discrepancies—customers presenting coupons for the first time

at the drive-through window—does not diminish the legitimacy of Defendant's concerns. There may be other explanations for the discrepancies beyond theft,[3] but Plaintiff has offered no reason to believe Plum, Barocko, and Ballance fabricated their concern to cover up their unlawful discrimination. Indeed, whether Plaintiff was actually stealing or not is largely irrelevant, the relevant question is whether the evidence of theft was a sufficient reason and the actual reason for Plaintiff's termination. Plaintiff's evidence does not demonstrate that Defendant made up its reason for the termination, the stated reason was not the real reason, or that the stated reason is insufficient to justify the decision. *See Chen*, 580 F.3d at 400.

Plaintiff also expends substantial effort providing details and documentation concerning her medical ailments. The severity of her conditions, however, and inconsistencies in the testimony of Plum, Barocko, and Ballance concerning their understanding of those conditions does not demonstrate pretext. It demonstrates Plaintiff was suffering from several serious ailments and Defendant had knowledge of those ailments, but not that Plaintiff's employment was terminated because of those ailments. Indeed, Plaintiff was afforded the opportunity to take medical leave on two occasions, and Defendant returned her to her previous position on both occasions, in accordance with the FMLA. There is no evidence that the inconvenience associated with those absences played any role in the decision to end her employment.

There was evidence to justify Defendant's suspicion that Plaintiff was stealing from the restaurant and its customers, and Plaintiff has not demonstrated that Defendant's decision to

---

[3] The speculative nature of the evidence may explain why Defendant did not elect to pursue criminal prosecution of Plaintiff or contest her eligibility for unemployment. Those decisions, however, do not necessarily demonstrate that Plum, Barocko, and Ballance made up the reason for Plaintiff's termination. Rather, they demonstrate that the supervisors lacked the type of concrete evidence that would be required for a prosecutor to prove embezzlement beyond a reasonable doubt.

terminate her employment because of those suspicions was an attempt to cover up interference with FMLA leave or retaliation for exercising FMLA rights. *Chen*, 580 F.3d at 400 n.4. Accordingly, Plaintiff's FMLA claims will be dismissed.

**B**

Plaintiff contends that she is "disabled" within the meaning of the ADA and the and the MPDCRA, and that the decision to end her employment was motivated by her disability in violation of both statutes.[4] The ADA prohibits covered employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Accordingly, to succeed on her claim, Plaintiff must prove she is qualified to perform the job, she is disabled, and she was discharged from the job because of the disability. *See Cotter*, 287 F.3d at 597–99. Defendant contends she cannot meet her burden of proof on any of those elements.

Pursuant to the ADA, a "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major Life Activities means function such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Although Plaintiff did not specifically identify her alleged disability in her complaint, she contends in response to Defendant's motion for summary judgment that kidney stones and arthritis, along with the symptoms associated

---

[4] The MPDCRA "substantially resembles the ADA" and Plaintiff has not pointed to any differences in the statutes that require separate analysis of the claims. *See Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 595 (6th Cir. 2002).

with those conditions, constitutes a disability because it is a physical impairment that limits her ability to work. Pl.'s Resp. 29–32.

In this case, even if Plaintiff was "disabled" but otherwise qualified for the job, there is insufficient evidence connecting the alleged disability to the decision to end her employment to survive Defendant's summary judgment motion. The only evidence connecting the alleged disability with the decision to end Plaintiff's employment is an isolated remark made by Barocko shortly after Plaintiff returned to work following surgery in September 2007. Barocko was discussing Plaintiff's medical condition while washing dishes at the restaurant and suggested that Plaintiff should "be disabled like [Barocko's] husband because [Plaintiff] had all the medical issues." Pl. Dep. 51. The comment is insufficient evidence of disability discrimination to reach a jury.

First, the comment is remote in time from the decision to end Plaintiff's employment. Plaintiff testified that Barocko made the comment shortly after she returned from medical leave in September 2007. Defendant did not decided to end Plaintiff's employment until February 2008, five months later. Second, the context surrounding the comment indicates it was part of a personal discussion; not part of a managerial decision making process. Plaintiff and Barocko were washing dishes at the time and Plaintiff was describing her medical issues to Barocko. Barocko responded by comparing Plaintiff's medical situation to her own husband's medical situation, and suggesting Plaintiff may have an opportunity to receive government-funded aid, like her husband. There is no indication from the record that Barocko questioned Plaintiff's continued ability to do her job. Finally, as discussed in detail above, Defendant has provided substantial evidence to suggest that its managers believed Plaintiff was stealing from the company and its customers, and the suspected

theft motivated the decision to terminate Plaintiff's employment. Although Plaintiff contends she was always honest and never stole money or product from her employer, "[a]n employee's bare assertion that the employer's proffered reasons has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Joostberns v. United Parcel Serv., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006) (citing *Majewski v. Automatic Data Processing*, 724 F.3d 1106, 1117 (6th Cir. 2001)).

**IV**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 12] is **GRANTED**.

It is further **ORDERED** that Defendant's motion to strike Plaintiff's expert witness [Dkt. # 13] is **DENIED AS MOOT**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 11, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 11, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---